IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALPHA ALPHA, LLC, a New Mexico limited
liability company, on behalf of itself and
derivatively on behalf of Avalon Jubilee, LLC,

    Plaintiff,

    vs.                          No. CV 18-648 KG/JFR

LAND STRATEGIES, LLC,
a Nevada limited liability company,
RONALD R. COBB, and PETER GHISHAN,

    Defendants,

-and-

RONALD R. COBB,

    Third-Party Plaintiff,

    vs.

AVALON JUBILEE, LLC,
a New Mexico limited liability company,

    Third-Party Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Third-Party Plaintiff Ronald R. Cobb's (Cobb) Motion for Partial Summary Judgment, filed October 31, 2018. (Doc. 23). Cobb seeks summary judgment on his claim for advancement of costs from Third-Party Defendant Avalon Jubilee, LLC (Avalon). Avalon filed its response and a supporting Declaration of James Nicholas Blea on December 20, 2018. (Docs. 43 and 42). Cobb filed his reply on January 7, 2019. (Doc. 46). Having reviewed the briefing, the record, and the applicable law, the Court grants Third-Party Plaintiff Ronald R. Cobb's Motion for Partial Summary Judgment on advancement of costs, and

orders Cobb to submit a statement of costs-to-date within ten (10) calendar days of the date of entry of this Memorandum Opinion and Order. Avalon will then have five (5) calendar days to contest, in writing, any costs-to-date with which it takes issue. The Court will issue a written order on Cobb's costs-to-date. For future costs, Cobb will submit monthly billing statements to Avalon. Should Avalon dispute any claimed costs, it will submit a written explanation for its dispute to Cobb within ten (10) calendar days of receipt of Cobb's monthly billing statement. The parties shall meet and confer to resolve any such disputes, but either party may bring unresolved issues to this Court by motion no later than forty-five (45) calendar days after Avalon's receipt of the statement at issue. Finally, Avalon will pay the undisputed portion of Cobb's future costs, as indicated on the monthly billing statement, within fifteen (15) calendar days of receipt of Cobb's monthly billing statement.

I. <u>Background and Procedural History</u>

Alpha Alpha, LLC (Alpha Alpha) filed suit in New Mexico state court on November 17, 2017, alleging, among other things, that Cobb and the other Defendants mishandled and misappropriated money from Avalon. Alpha Alpha was and is Avalon's majority member. Land Strategies, LLC, owned 50/50 by Cobb and Peter Ghishan, was also a member of Avalon. Cobb was Avalon's first Manager, vested with near plenary authority to conduct Avalon's affairs. Avalon's Members voted to remove Cobb as Manager "for cause" on April 27, 2018. (Doc. 43) at Fact R; (Doc. 46) at 7.

Alpha Alpha, on behalf of Avalon, claims that Cobb acted beyond his authority and abused his position to bilk Avalon out of more than $600,000.00 by paying Land Strategies an unauthorized $10,000.00 per month "management fee," among other misdeeds. At this stage, Alpha Alpha's allegations are exactly that—allegations.

Avalon adopted the Operating Agreement of Avalon Jubilee, LLC (Operating Agreement) on May 16, 2012. (Doc. 23) at Fact 1; (Doc. 43) at Fact 1. The Operating Agreement specifically addresses the "Rights and Duties of Managers." (Doc. 23-1) at 5. To wit,

> 5.01 Management. The business and affairs of the Company shall be managed by its designated Manager. The initial Managers of the Company shall be Ronald R. Cobb. The Manager shall direct, manage and control the business of the Company to the best of his ability. Except for situations in which the approval of the Members is expressly required by this Operating Agreement or by non-waivable provisions of applicable law, the Manager shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business. At any time that there is more than one Manager, each Manager shall have the right and authority to act independently.

(Doc. 23-1) at 5; (Doc. 10) at 24. The Operating Agreement further addresses advancement to the Manager:

> 5.08 Indemnity of the Manager, Employees and Other Agents. To the maximum extent permitted under the [New Mexico Limited Liability Company] Act, the Company shall indemnify the Manager and make advances for expenses. The Company shall indemnify its employees and other agents who are not Managers to the fullest extent permitted by law, provided that the indemnification in any given situation is approved by Members owning a Majority Interest or arises from actions of the Manager in carrying out his duty to manage the Company assets, develop the assets and create income for the Company.

(Doc. 23-1) at 7; (Doc. 10) at 26.

Cobb now moves for partial summary judgment against Avalon on his claim for advancement of costs. (Doc. 23).

II. Standard of Review

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "When applying this standard, [the Court] view[s] the evidence and draw[s] reasonable inferences therefrom in

3

the light most favorable to the nonmoving party." *Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000) (internal quotation marks omitted). The movant bears the initial burden of showing the absence of a genuine issue of material fact, then the burden shifts to the non-movant to provide evidence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). A fact is "material" if, under the governing law, it could influence the outcome of the lawsuit, and "genuine" if a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1079 (10th Cir. 1999); *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted). A party cannot avoid summary judgment simply by resting upon the mere allegations or denials of his pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

III. Discussion

Cobb's claim for advancement of costs presents a straightforward question of statutory and contract interpretation arising out of an unusual situation. Cobb argues that § 5.08 of the Operating Agreement is unambiguous and applies in this case. Avalon counters that Cobb was not named as a party "on account of being the manager," so § 5.08 does not apply; the Operating Agreement does not authorize advancement of costs for former managers; "the intent" of § 5.08 "precludes advancement of costs" for Cobb under the circumstances; and Cobb breached the Operating Agreement. (Doc. 43).

A federal court sitting in diversity, as in this case, must apply the substantive law of the state in which it sits. *Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency*, 123 F.3d 1351, 1352 (10th Cir. 1997). The New Mexico Limited Liability Company Act (NMLLCA), NMSA 1978 §§ 53-19-1 *et seq.*, governs limited liability companies in New Mexico. "It is the policy of

4

the [NMLLCA] to give maximum effect to the principle of freedom of contract and to the enforceability of operating agreements of limited liability companies." § 53-19-65(A) NMSA 1993. With respect to advancement of expenses, the NMLLCA states:

> an operating agreement may provide for indemnification of a . . . manager for judgments, settlements, penalties, fines or expenses incurred in a proceeding to which a person is a party because he is or was a . . . manager and for advancement of expenses, including costs of defense, prior to final disposition of such proceeding.

§ 53-19-18 NMSA 1993.

Generally, the goal of contract interpretation is to "ascertain the intentions of the contracting parties." *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 11, 12 P.3d 960. "The court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties." *Id.*

The Operating Agreement states that Avalon "shall . . . make advances for expenses" to the Manager to the "maximum extent permitted" under the NMLLCA. (Doc. 23-1) at 7. On its face, § 5.08 applies to Cobb in this instance. Cobb was Avalon's Manager when Alpha Alpha commenced this action and was made a party because of his conduct as Manager. (Doc. 23-2).

Having determined that § 5.08 apparently applies to Cobb in this case, the Court turns to Avalon's arguments as to why it should not be required to provide advancement and addresses each argument in turn. As explained below, the Court finds that Cobb was named as a party "on account of" being Avalon's Manager and that Cobb was the current Manager when named as a party to this litigation. The Court further concludes there is no evidence to suggest that Avalon's Operating Agreement intended to preclude advancement of costs under circumstances like these.

Finally, any breach of the Operating Agreement has not been established and is merely alleged, indeed underpinning the purposes of advancement.

A. Cobb was Named as a Party "on Account of" Being the Manager

Avalon first argues that Cobb was not named as a party "on account of" being or having been Avalon's Manager. (Doc. 43) at 8-9. Avalon contends that Cobb was named "on account of having wrongfully taken money from the Company, and on account of misusing Company funds for his own profit." (*Id.*) at 9. In support of its argument, Avalon cites a *Souder v. Rite Aid Corporation*, 911 A.2d 506 (Pa. Super. Ct. 2006), and *Weaver v. ZeniMax Media, Inc.*, 2004 WL 243163 (Del. Ch. 2004).

In *Souder*, the Pennsylvania Superior Court held that plaintiff was not entitled to advancement of costs in an action seeking recovery of improperly paid compensation because "[t]here is no allegation that [plaintiff] performed any executive level function." 911 A.2d at 509. The plaintiff in *Souder* received and accepted compensation under a long-term incentive plan when the conditions for incentive payments had not been met, and received severance payments pursuant to a severance agreement not approved by the Board. There was no allegation that the plaintiff caused those payments to be made or otherwise exercised his position within the company in relation to those payments, simply that he accepted payments directed by others.

The *Weaver* court analyzed whether claims were brought on account of plaintiff's role as director or officer of the corporation, or "by reason of fact" that he was an employee of the corporation. 2004 WL 243163, at * 2. The *Weaver* court concluded that plaintiff was named because he was an employee. *Weaver* does not apply because Cobb was never an employee of Avalon.

Unlike *Souder*, Alpha Alpha alleged in its First Amended Complaint that Cobb, as Manager, violated the Operating Agreement, "has been paying himself a salary of $120,000 per year without unanimous approval by the Members," and failed to keep all books and records as required by the Operating Agreement. (Doc. 23-2) at ¶¶ 70-77. In its Second Amended Complaint, Alpha Alpha again alleged that Cobb violated the Operating Agreement, and "after being installed as Manager, . . . paid himself, [Ghishan] or Land Strategies an excessive 'management fee' of $10,000 per month," "caused $658,890 to be paid to [Ghishan] by [Avalon]," and improperly utilized Avalon's resources. (Doc. 2) at ¶¶ 59, 61-62, 64-67, 69-71. In its Proposed Third Amended Complaint, Alpha Alpha now alleges that Cobb violated the Operating Agreement, paid "Land Strategies, LLC an unlawful $10,000 per month management fee," and "after being installed as Manager, . . . paid himself, [Ghishan] or Land Strategies an excessive 'management fee' of $10,000 per month," "caused $658,890 to be paid to [Ghishan] by [Avalon]," and improperly utilized Avalon's resources. (Doc. 22-1) at ¶ 25, 60-66, 68-71, 73-75.

In each iteration of its Complaint, Alpha Alpha also complains of Cobb's conduct as a Member, that is, as the representative of Land Strategies, LLC. However, Alpha Alpha's allegations regarding Cobb's conduct intermingle his role as Manager and his role as a Member representative. The Court finds that each Count in the operative Complaint names Cobb "on account of" his role as Manager.

Though not addressed by Alpha Alpha or Avalon, the Operating Agreement expressly imbues the Manager with "full and complete authority, power and discretion to manage and control the business, affairs and properties of [Avalon], to make all decision regarding those matters and to perform any and all other acts or activities customary or incident to the

7

management of [Avalon's] business." (Doc. 23-1) Operating Agreement § 5.01. The Operating Agreement further provides that the Manager "shall have power and authority," on Avalon's behalf:

> e. To execute on behalf of [Avalon] all instruments and documents, including, without limitation: checks, drafts, notes and other negotiable instruments, mortgages or deeds of trust, security agreements, financing statements, documents providing for the acquisition, mortgage or disposition of [Avalon's] property, assigns, bills of sale, leases, partnership agreements, operating agreements of other limited liability companies, and any other instruments or documents as necessary, in the opinion of the Managers to the business of [Avalon];
>
> f. To employ agents and consultants, contractors, accountants, legal counsel, managing agents or other experts to perform services for [Avalon]; including affiliates of Managers or Members provided that the terms and compensation is no more favorable to the affiliated parties than those available from comparably qualified unrelated parties;
>
> g. To enter into any and all other agreements on behalf of [Avalon], with any other Person for any purpose, in such forms as the Managers may approve;
>
> h. To do and perform all other acts as may be necessary or appropriate to the conduct of [Avalon's] business."

(Doc. 23-1) Operating Agreement § 5.03.

Alpha Alpha squarely alleges that Cobb, as Manager, inappropriately discharged his duties or otherwise exceeded his authority. In other words, Alpha Alpha claims Cobb abused his authority as Manager. Either way, Alpha Alpha's allegations target Cobb's affirmative conduct as Avalon's Manager, rather than passive acceptance of income as in *Souder*.

The Court finds that each of Alpha Alpha's claims against Cobb arise "on account of" Cobb's role as Avalon's Manager and that Cobb was named as a party-defendant on that basis.

B. <u>The Operating Agreement Authorizes Advancement of Costs to Cobb</u>

Next, Avalon argues that the Operating Agreement does not allow advancement of costs for former managers, and Cobb is no longer the manager. The Court need not construe or

interpret the Operating Agreement because Cobb was the Manager when this action commenced. (Doc. 23-2) at ¶ 11 ("Ronald R. Cobb is the manager of [Avalon]."). By its terms, and as admitted by Avalon, the Operating Agreement provides for advancement to Managers, which Cobb was when Alpha Alpha filed suit.

The Operating Agreement, and Avalon's argument, is silent with respect to what happens when a Manager is sued and later removed from office. When "a contract is silent on an issue, the law implies a reasonable term to cover that issue." *ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶ 67, 299 P.3d 844 (quotation omitted).

Had the Operating Agreement's drafters intended to terminate advancement when the Members remove a Manager, they could have so provided. They did not. Terminating advancement based upon removal would materially alter the benefits and protections provided by the Operating Agreement. The Court, thus, finds no evidence that the drafters intended to terminate the advancement provision upon removal of an otherwise covered Manager.

Because Cobb was the Manager when this action commenced, and the Court finds that the Operating Agreement does not terminate advancement upon removal of a Manger, the Operating Agreement authorizes advancement of costs for Cobb under these circumstances. The Court need not address whether the Operating Agreement would authorize advancement of costs for Cobb had the action commenced after his removal.

C. <u>The Operating Agreement Did Not Intend to Preclude Advancement of Costs</u>

Avalon then argues that "the spirit" of § 5.08 does not allow advancement for Cobb under these circumstances because he "diverted money to himself and used [Avalon's] assets for other business ventures." (Doc. 43) at 11. Alpha Alpha's allegations against Cobb remain just that –

allegations. As discussed above, each count of Alpha Alpha's Complaint implicates Cobb's performance as Manager.

Avalon's contention that the Operating Agreement drafters intended to disallow advancement under these circumstances is not persuasive. First, the Operating Agreement is silent on the issue of fraud, malfeasance, or other willful conduct. Second, the Operating Agreement expressly incorporates the NMLLCA. (Doc. 23-1) at 7 (Operating Agreement § 5.08). Like the Operating Agreement, the NMLLCA is silent on these issues. *See* § 53-19-18 NMSA 2010.

Other sections of the Corporations title of the New Mexico Statutes, Title 53, squarely address this situation. For example, Article 11 Business Corporations allows a corporation "to advance reasonable expenses to an officer . . . of the corporation" to the same extent it may do so for a director. § 53-11-4.1(I). Directors must furnish an undertaking (a written agreement to repay the advancement if the director loses the case) before receiving advancement, must certify that he acted in good faith and reasonably believed he acted in the best interests of the company, and had no reasonable cause to believe his conduct was unlawful. § 53-11-4.1(F); § 53-11-4.1(B)(1)-(3). Article 11 expressly states that a "director shall not be indemnified [or given advancement] . . . in respect of any proceeding charging improper personal benefit to the director[.]" § 53-11-4.1(C). No such limitation exists in the NMLLCA or in the Operating Agreement.

Similarly, Article 8 Nonprofit Corporations allows advancement for directors or officers of nonprofit corporations, provided that such advancement must be reimbursed if the director or officer "shall be adjudged to be liable on the basis that he has breached or failed to perform the duties of his office and the breach or failure to perform constitutes willful misconduct or

10

recklessness." § 53-8-26 NMSA 2010.  Again, no such limitation or provision exists in the NMLLCA or in the Operating Agreement.

As Avalon notes, the NMLLCA aims to give maximum effect to operating agreements. (Doc. 43) at 10; § 53-19-65 NMSA 2010.  Had the drafters intended to exclude advancement in cases like this, or had the drafters intended to require an undertaking or other reimbursement of such advancement, they could have included that term in the Operating Agreement.  They did not.  Nothing in the Operating Agreement suggests that it intends to prohibit advancement in this case.

D. <u>No Breach of the Operating Agreement has been Proven</u>

Finally, Avalon argues that Cobb breached the Operating Agreement and is not entitled to enforce it.  The Court finds this argument problematic because Avalon relies on a determination that has not been made: that Cobb breached the Operating Agreement.  Even if the Court assumed, which it does not, that any breach of the Operating Agreement discharged Avalon's advancement obligation, such a breach has not been proven.

Cobb accurately points out that "[a]dvancement is a distinct right" designed so that the officer, in this case, Cobb, does not have to front the cost of defending himself.  *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1227 (10th Cir. 2009).  "If a [business] withholds advances, the right will be irretrievably lost at the conclusion of litigation, because at that point the officer will only be entitled to indemnity." *Id.* at 1225.

The Court agrees.  At this stage, Cobb is defending himself against mere allegations, troubling though those allegations may be.  However, the Court is bound by the NMLLCA and the Operating Agreement, neither of which allows Avalon to deny advancement under these admittedly unusual circumstances.

IV. Conclusion

Section 5.08 of the Operating Agreement applies and requires Avalon to advance Cobb's costs and fees in defending this action. Cobb's Motion for Partial Summary Judgment on his claim for advance expenses is well-taken. The parties will follow the steps outlined above to resolve presently outstanding costs and expenses, and to address future costs and expenses.

IT IS, THEREFORE, ORDERED that

1. Third-Party Plaintiff Ronald R. Cobb's Motion for Partial Summary Judgment Against Third-Party Defendant Avalon Jubilee, LLC: Claim for Advance Expenses (Doc. 23), filed October 31, 2018, is granted;

2. Judgment is entered in favor of Cobb and against Avalon on Cobb's claim for Advance Expenses;

3. Cobb will submit a statement of costs-to-date within ten (10) calendar days of the date of entry of this Memorandum Opinion and Order; Avalon will then have five (5) calendar days to contest, in writing, any costs-to-date with which it takes issue;

4. Cobb will submit monthly billing statements to Avalon for future costs; if Avalon disputes claimed costs, it will submit a written explanation for its dispute to Cobb within ten (10) calendar days of receipt of Cobb's monthly billing statement and will pay the undisputed portion of each monthly billing statement within fifteen (15) calendar days of receipt thereof; and

5. If the parties are unable to resolve any disputes related to Cobb's monthly billing statement, either party may bring such issue(s) to the Court by motion no later than forty-five (45) calendar days after the date of receipt of the statement at issue.

_____
UNITED STATES DISTRICT JUDGE